# WHEELING.

LIVESAY v. FEAMSTER *et al.*

FEAMSTER v. TYREE *et al.*

FEAMSTER v. HARRIS AND RUCKER, COM'RS, *et al.*

Submitted January 19, 1881—Decided December 2, 1882.

(*SNYDER, JUDGE, Absent.)

1. In a suit brought by a judgment-creditor to enforce his judgment-lien he should make formal defendants to the suit all creditors, who have obtained judgments against the debtor in the courts of record in the county wherein the lands lie, which he seeks to subject, and if he fails to do so, he should in the order of reference in the cause provide for calling in all judgment-creditors of the debtor by publication ; and if this be not done, this court in such a case will reverse an order of the court confirming the commissioner's report and ordering a sale of the debtor's lands.   (p. 99.)

2. A judge in vacation may dissolve an injunction, though some formal parties defendants have not answered the bill, when an answer has been filed by the substantial defendants in the bill, which denies all the material allegations of the bill, and no proof has been taken to sustain the bill.   (p. 103.)

3. Opinion of Green, Judge, as to the parties, on whom it is necessary for a commissioner in chancery to serve a notice, and as to the measure of accuracy required in order to make such notice sufficient, if objected to in court below.  (p. 99.)

4. Opinion of Green, Judge, as to when a person, who had not been served with notice in the court below, would be permitted to appear in the Appellate Court and waive errors and ask, so far as he was concerned, an affirmation of a decree in the court below.  (p. 101.)

Appeal from certain decrees of the circuit court of Greenbrier county, rendered respectively on 19th day of October, 1878, on the 16th day of November, 1878, and on the 12th day of February, 1879, in three several causes in said court then pending, in the first of which J. J. Livesay was plaintiff, and J. A. Feamster and others were defendants, in the second of which J. A. Feamster was plaintiff and Samuel Tyree and others were defendants, and in the third of which J. A.

---

*Cause submitted before Judge S. took his seat on the bench.

Feamster was plaintiff and Harris and Rucker, commissioners and others were defendants, with a *supersedeas* to so much of said decrees as orders the sale of certain lands of said Joseph A. Feamster, allowed upon the petition of said Feamster.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decrees appealed from.

GREEN, JUDGE, furnishes the following statement of the case :

At August rules 1878, Joseph J. Livesay filed his bill in chancery in the circuit court of Greenbrier, in which he set out, that on May the 28th, 1878, he recovered a judgment in the circuit court of said county for one hundred and forty-two dollars and fifty cents, with interest thereon from the date of its recovery and costs of suit nine dollars and fifty cents, against Joseph A. Feamster, which remained unpaid; a copy of which was filed with the bill. The bill alleges, that Joseph A. Feamster, was the owner of three tracts of land in fee in said county; the first, a tract of land of five hundred acres, devised to him by his father's will, a copy of which was filed with the bill; the second, a tract of land of twenty-eight acres near Lewisburg, a copy of the deed for which to him was filed in the bill, and the third, a lot of ten acres also near Lewisburg, a copy of the deed for which to him was also filed in the bill. The bill further states, that on February 24, 1876, Joseph A. Feamster executed a deed of trust to John W. Harris, trustee, conveying this five hundred acre tract in trust to save harmless, his sureties, Austin Handley and Harvey Handley, endorsers of a note drawn by him for one thousand three hundred dollars, dated February 29, 1876, and payable eight months after date, and on May 5, 1876, he executed another deed of trust to Samuel Tyree, trustee, conveying the same tract of land to secure a bond of four thousand six hundred and thirty-eight dollars and three cents, payable the 13th of April, 1876, to Joseph Feamster; and February 3, 1877, he executed a third deed of trust on the same land to John W. Harris, trustee, to secure a bond of one thousand three hundred dollars dated February 3, 1877, with interest from October 30, 1876, and

payable October 30, 1877, to Sarah Smithee; which bond was executed by John A. Feamster as principal, and Samuel Tuckwiller as security.   Official copies of all these deeds of trust, which were promptly recorded, were filed with bill.

The bill further alleged, that the first of these deeds of trust had been discharged, the debt being satisfied and that the greater part of the debt secured by the last of these deed of trusts had also been paid.   The bill states, that Joseph Feamster had died leaving a widow, Sarah A. Feamster, and two children, Joseph Feamster and Laura Feamster, his heirs, and that John W. Harris had qualified as his administrator; and that the rents and profits of these lands would not satisfy the liens in five years, and that the plaintiff is informed, that there are other liens on these lands, but that he does not know what they are nor all the persons to whom due.

The bill prayed, that the following parties be made defendants :   Joseph A. Feamster, Austin Handley and Harvey Handley, Sarah Smithee, John W. Harris, trustee, and also administrator of Joseph Feamster, deceased, Samuel Tyree, Sarah A. Feamster, Joseph Feamster, Laura Feamster and Samuel Tuckwiller;   and that the plaintiff might have a decree for his judgment and interest, and the costs of this suit; that this cause might be referred to a commissioner, to state an account of the liens on the lands of Joseph A. Feamster; that these lands might be sold, or so much thereof as might be necessary, to reach and satisfy the plaintiff's judgment, and for general relief.   Joseph Feamster and Laura Feamster, being infants, filed their answer by their guardian *ad litem*, Jonathan Mays.   John W. Harris, administrator of Joseph Feamster, filed his answer admitting the truth of the allegations in the bill, so far as they were made with reference to the debt of four thousand six hundred and thirty-eight dollars due to his intestate, and stating, that no part of this debt had been paid.

The summons was issued in this cause against all the defendants named, except Austin Handley and Harvey Handley; and was duly served on all the defendants included in the summons, before the filing of the bill.   On the 19th day of October, 1878, the judge of said court in vacation, entered the following order of reference:

"On motion of the plaintiff, notice in writing having been served upon the defendant, Joseph A. Feamster, of the time and place of making this motion, it is ordered that this cause be referred to J. M. McWhorter, a commissioner of this Court, who is directed to take, state and report to this Court at its next term—

"First—The quantity, value and location of all the real estate owned by the defendant, Joseph A. Feamster, at the date of the recovery and execution of the liens in the plaintiff's bill set forth.

"Second—The amount, dignity and priority of all liens upon said real estate, and to whom due.

"Third—All matters deemed pertinent or required by any party to this suit.

"Said commissioner is required to give the parties or their attorneys notice of the time and place for the taking of said account.

"H. A. Holt."

On the day this order was entered, the commissioner gave notice to all the defendants, that he would execute it on the 2d day of October at his office in Lewisburg. This notice set out the decree correctly, which the commissioner was to execute except, that the plaintiff in the decree was by mistake in this notice called Jesse J. Feamster instead of Jesse J. Livesay. This notice was served on Joseph A. Feamster, on October 19, 1878; and its service was acknowledged the same day by all the defendants excepting only, Samuel Tuckwiller and Samuel Tyree. It was acknowledged by Austin Handley and Harvey Handley, defendants named in the bill, who had not been served with the summons, Samuel Tyree was the trustee in the deed of trust to secure a debt to Joseph Feamster, and while this notice was not served on the trustee it was served on the *cestori qui trust;* and while not served on Samuel Tuckwiller, it was served on his trustee, J. W. Harris. This notice was also acknowledged by the plaintiff the same day, October 19, 1878. The case was before the commissioner but a single day, and on the following day, October 23, 1878, he made his report, in which he states, that the debt named in the bill as secured by the oldest deed of trust had been satisfied, as the trustee in this deed in-

formed the commissioner.  The debt secured by the second deed of trust and due to the administrator of Joseph Feamster, was reported as all still due.  It amounted, with interest up to November 13, 1878, to five thousand three hundred and fifty-six dollars and ninety-two cents.  On the debt of one thousand three hundred dollars due to Sarah Smithee, on the bond of Joseph A. Feamster with Samuel Tuckwiller as surety, the obligee admitted, that there was paid eight hundred dollars on November 22, 1877.  The balance due, on this debt, with interest to November 13, 1878, was reported as six hundred and seventeen dollars and twenty-one cents.

As the third class, the commissioner reported a judgment against Joseph A. Feamster, in favor of Wm. W. Moore, of one hundred and ninety-five dollars and sixty-seven cents as of November 15, 1878.  As the fourth class, a judgment in favor of the plaintiff named in the bill, amounting to one hundred and fifty-six dollars and ninety-one cents, as of same date; and also a judgment in favor of R. P. Lake amounting to three hundred and twenty-nine dollars and eighty-seven cents as of same date.  Upon these two judgments brought into this report in favor of Wm. W. Moore and R. P. Lake, executions were issued and levied on sufficient property to pay them, and *venditioni exponas* issued returnable to December rules 1878.  The five hundred acre tract was valued at eight thousand three hundred and ninety-eight dollars and ninety-one cents; the tract near Lewisburg containing thirty acres and fifteen poles, at six hundred and sixty-three dollars and sixty cents; and the ten acre lot near Lewisburg at three hundred and fifteen dollars.  And it was stated, that either of these last two parcels, would sell for enough to satisfy the plaintiffs' claim.

Before the making of this report Samuel Tyree, trustee in the third deed of trust, at the request of John W. Harris, administrator of Joseph Feamster, advertised for sale on October 30, 1878, the five hundred acre tract conveyed by the deed of trust; and on September 25, 1878, Joseph A. Feamster filed his bill in said court in which he alleged, that the four thousand six hundred and thirty-eight dollars bond secured by this deed of trust, was given by him on a settlement made by him with Joseph Feamster, in his lifetime;

that this settlement was erroneous and he was entitled to credits, which were not allowed him; that he had two receipts he had lost, one of which he has since found, amounting to three hundred and eighty dollars and sixty-two cents. It is filed and is a receipt for this amount, dated May 7, 1868, being as it says the "amount paid to C. W. McClung, on a claim due from Joseph Feamster as guardian of McClung, and to be credited on a debt due to Joseph Feamster from Joseph A. Feamster and others. The other receipt the bill states could not be found. But he has found a witness, by whom he can prove, that he had before the settlement paid Joseph Feamster about eight hundred dollars on this settlement. He further states, that on the — day of August, 1877, he paid to Joseph Feaster, two thousand seven hundred and sixty-three dollars, to be credited on this bond of four thousand six hundred and thirty-eight dollars and three cents the receipt for which he filed and which was as follows :

"$2,763.     Received of Jos. A. Feamster, two thousand seven hundred and sixty-three dollars in bond, receipts and money, for which you are to give me a credit on a bond you hold on me, and the balance of the bond you can have from six to eight years to pay it in, paying the interest when demanded if I think it good.    This —— August, 1877.

                                             Joseph Feamster."

The bill states, that after these three credits of three hundred and eighty dollars, with interest from May 7, 1868, and eight hundred dollars and this two thousand seven hundred and sixty-three dollars and sixty-two cents as of August, 1877, have been given, the balance of the debt would be promptly paid. The bill prays an injunction to said sale, till this settlement has been corrected and these credits allowed him; and for general relief. This bill was sworn to. The injunction was awarded on an injunction bond, in the penalty of three thousand dollars being given with good security. This injunction was granted September 25, 1878, and the injunction bond given. John W. Harris, the administrator of Joseph Feamster, filed his answer sworn to, October 7, 1878. He affirms, that on his information and belief, and he so charges, that this bond of four thousand six hundred and three-eighty dollars and three cents, secured by this deed of trust, was given after a

full settlement of all accounts; that it extended over several days and all proper credits were given Joseph A. Feamster, and no mistakes made in it, and if he was entitled to a credit for this three hundred and eighty dollars and sixty-two cents it was given him; that the receipt for this sum he believes, but does not admit, was signed by Joseph Feamster. But the receipt for two thousand seven hundred and sixty-three dollars, he denies was signed by him and further states, that when it was dated August, 1877, his intestate was very infirm, being confined to his house and unable to attend to any business; that his hand-writing was then nervous, infirm and shaken, and so unlike the signature to this receipt, as to satisfy him it was false and pretended; and he emphatically affirms that it is not genuine; that the plaintiff at the date of this receipt, August, 1877, was pressed in pecuniary matters, and had been a borrower of money; that a number of executions had been levied on his property, and in the respondent's opinion, could not have raised any considerable sum; that as to the pretended bond and receipts, named in this pretended receipt of August, 1877, that none such came into his hands as administrator of Joseph Feamster, nor any assigned bond, nor any receipts or papers referring to any transactions with the plaintiff, except the unsettled bond secured by this deed of trust.

Samuel Tyree, the trustee, also filed his answer in which he simply admits, that he was proceeding to sell this five hundred acre tract as trustee, to pay this debt, when he was enjoined. This answer was by consent filed, without being sworn to by him.

On October 5, 1878, a notice was served on Joseph A. Feamster, that on October 19, 1878, he would move the judge of said court in chambers, at the clerk's office of said county, to dissolve this injunction. Replications were filed to these answers, and on these pleadings the judge on October 19, 1878, made an order dissolving this injunction. And on November 16, 1878, at the next term of the court, a decree was made in these two causes. In the first of them on the bill taken for confessed, as to all the defendants excepting those, whose answers we have stated were filed; and on these answers and replications to them, the report of Com-

missioner McWhorter, before referred to, and to which there was no exceptions, and the second of these causes was heard on the pleadings above stated; on consideration whereof the report in the first of these causes was confirmed and the bill in the second of causes was dismissed, and it was ordered, that the defendant J. W. Harris, administrator, &c., recover his costs. It was further ordered, that John W. Harris, administrator of Joseph Feamster, deceased, and Sarah Smithee, respectively recover of Joseph A. Feamster, the sums of money due them, as set out in said report, with interest on said sums from November 13, 1878; and that plaintiff J. J. Livesay, recover his costs. And unless said Joseph A. Feamster, should within ten days pay the debts named in said report, that Wm. P. Rucker, and John W. Harris, as special commissioners either of whom might act, should sell the plaintiff's land in the bill named, or so much thereof as might be necessary; selling first the five hundred acre tract. The terms of sale fixed were, cash sufficient to pay the costs of suits and expenses of sale, and the residue in six, twelve and eighteen months, with interest from the day of sale, taking from the purchaser bonds with good security for the deferred payments.

The land was to be sold in front of the Lewisburg hotel, after advertising the time, place and terms of sale, for four successive weeks in some newspaper published in Greenbrier county. They were required also, before receiving any money, to give bond and security in the penalty of ten thousand dollars as required by law.

On January 1, 1879, the plaintiff Joseph A. Feamster, filed another bill asking an injunction to prevent the said commissioners from selling said lands, under this decree, which they had advertised for sale on the 2d day of January, 1879. They, as well as John W. Harris administrator of John Feamster, were made defendants to the bill. The bill reiterates the allegations of his former bill of injunction, and states the proceedings, which had been up to that time had in these causes, and alleges as additional facts, that he gave notice that on the 17th of October, 1878, at the office of Dennis and Dennis, in the town of Lewisburg, he would take depositions to supprot his original bill

of injunction, which he had been notified the defendants would ask to have dissolved on the 1st day of October, 1878. That he was prevented by sickness, on the 17th day of October, 1878, from taking his depositions; that on that day and for several days thereafter, he could not ride to the town of Lewisburg. To sustain this, he files the affidavits of James M. Stone, Charles W. Stone and himself. In his affidavit he states, what is on this subject alleged in the bill, and that he was too sick to ride to Lewisburg for several days after October 17, 1878. And when he did. get there he was informed, that the papers had been submitted to the judge, on the motion to dissolve the injunction, and it was too late to take his depositions to prove the signature of Joseph Feamster to the receipt of two thousand seven hundred and sixty-three dollars.

Charles W. Stone swears, that he lived with Joseph A. Feamster ten or twelve miles from Lewisburg; that he knows that on or about the 17th, 18th or 19th days of October, 1878, Joseph A. Feamster was sick, confined to his bed and room, and too unwell to go to Lewisburg. And James M. Stone swears, that he lived two miles from Joseph A. Feamster's house, that on or about the 17th, 18th or 19th of October, 1878, he came to his house on his way to Lewisburg, but he was too sick to go further and he took him back home. He was too unwell to attend to any business, or to ride to town; and that he was unwell for some days afterwards. To support his allegations of the genuineness of this receipt of Joseph Feamster for two thousand seven hundred and sixty-three dollars, he files the affidavits of Samuel C. Ludington, John A. Feamster, S. W. N. Feamster and Thos. L. Feamster. They swear, that they severally are acquainted with the handwriting of Joseph Feamster, and most of them say well acquainted with his handwriting, and that the signature to the receipt of two thousand seven hundred and sixty-three dollars is in their opinion, his genuine signature. This bill prays for these reasons, that the injunction theretofore awarded might be reinstated, or a new injunction awarded to restrain these commissioners from selling his lands, until these matters are settled and he gets his credits for these two receipts of three thousand eight hundred dollars

and sixty-two cents, dated May 7, 1868, and two thousand seven hundred and sixty-three dollars as of August 1877; and it asks for general relief. This bill was sworn to. This injunction was awarded as prayed for on January 1, 1879.

John W. Harris, the administrator of Joseph Feamster, filed his answer to this bill called an amended and supplemental bill, which was sworn to by him January 10, 1879. This answer repeats the statements made in his answer to the first bill of injunction, and states that he is informed and charges, that Joseph A. Feamster was in the town of Lewisburg a few days before and a few days after October 17, 1878, and that he was there on October 19. The court did not meet till October 25, 1878, and the decree dismissing the first bill of injunction was not entered till November 16, so that he had ample opportunity to take his depositions and reinstate his injunction. He claims that in the first of the above causes the report of the commissioner fixing the lien of the whole of this debt secured by this deed of trust, had been confirmed by this Court, there being no exceptions to it; though the plaintiff had opportunity to object if he had thought proper. And thus the whole matter is now *res adjudicata* and ought not to be reopened.

On January 24th, a notice was served on Joseph A. Feamster, that the defendant J. W. Harris would move to dissolve this last injunction on the 27th of January. On that day on the motion of the plaintiff, the hearing of this motion to dissolve this injunction was continued till February 12, 1879. And on that day, the cause being heard in vacation on this motion and on all the pleadings and orders in said causes hereinbefore stated, and said answer last named and replication thereto, and numerous depositions and exhibits filed in the cause, on consideration whereof the judge sustained the motion to dissolve, and the injunction awarded Joseph A. Feamster on January 1, 1879, was dissolved and this decree was certified to the clerk of the court to be entered and was entered. No less than fifty-two depositions were taken and no less than forty-nine exhibits filed with them. The great majority of these depositions were taken to prove, where Joseph A. Feamster was on the 17th, 18th and 19th days of October, 1878, when he claims he was sick at home,

and unable to go to Lewisburg to attend to the taking of depositions in this cause; and on the question, whether the signature of Joseph Feamster to the receipt dated August, 1877, for two thousand seven hundred and sixty-three dollars was or was not genuine.

These depositions cover two hundred and seventy-five pages of the manuscript record, and nothing can be given of them except the general results established by them. They prove conclusively, that Joseph A. Feamster was not sick at his home on the 17th, 18th or 19th days of October, 1878, or for some days certainly before and after that time. He was in the town of Lewisburg on October 14, 1878, and also the next day, October 15th. He was in Alderson on the 16th, some five or six miles from his house. On the 17th, the day appointed by him to have depositions taken to sustain his injunction, he was again in Alderson; and on the next day the 18th, he was again in Lewisburg, and he was again there on the 19th, and on the 21st, he was again in Alderson. The conclusion is inevitable, that the affidavits filed with his second bill with reference to his sickness assigned as the reason for not having attended to these causes at the proper time, are utterly false. There would seem to be no foundation for it except, that he was probably to some extent, drunk on the 18th of October, 1878, but not sick, as he went to Alderson and back that day, a distance of ten or twelve miles.

On the question of the genuineness of the signature to the receipts claimed in Joseph A. Feamster's bills to have been signed by him, it was clearly proven, that he signed the receipt for three hundred and eighty dollars and sixty-two cents dated May 7, 1868. Nine witnesses testified, that they were more or less acquainted with his signature, and believed that signature to the receipt for two thousand seven hundred and sixty-three dollars dated August, 1877, was in his handwriting; of these, two of them were lawyers and one a deputy sheriff; the others were not, I presume, familiar to any considerable extent with handwritings, and I cannot attach a great deal of importance to their judgment, especially as it is proven, that Joseph Feamster himself wrote but little other than his signature, though it was quite uniform

for one who wrote so little. On the other hand twelve witnesses, also more or less acquainted with his handwriting testified, that in their opinion the signature to this receipt was not in his handwriting. Of these two were merchants, two lawyers, one a sheriff, one a deputy sheriff, one the clerk of a court, one a commissioner in chancery, one the teller of a bank and one the cashier of a bank, while only three of them were men, whom from their employments I would not suppose could form an accurate judgment in the matter. I am of opinion, that the very decided weight of the evidence is against the genuineness of the signature of Joseph Feamster to this receipt. This conclusion is strongly corroborated by the proof which is clear, that he was in no condition physically to transact any business during the month of August 1877, when this receipt is dated. He was in a very weak condition during the whole of that month. During the first eight or ten days he was confined to his bed a portion of the time, and was up sometimes, but confined to the house, an invalid requiring constant attention, being very weak from continual chronic dysentery. After the first eight or ten days of August he became so much prostrated, that he was confined to his bed altogether and died on the 10th of September 1877; being in an almost insensible condition for several days before his death.

The signature to this receipt all the witnesses agree, was in as firm and steady a handwriting as when he was in perfect health, and it is almost certain had he signed his name at all during the month of August, 1877, it would have been in a trembling and unsteady hand-writing, markedly different from his writing when in health.

But it is certain he did not sign this receipt in August, 1877. It is clearly proven, that he was at home in this sickly condition during the whole of that month, and that Joseph A. Feamster was not there during that month, nor was he there but once afterwards on September 8, two days before the death of his uncle Joseph Feamster. Again it is proven, that he died on September 10, 1877, and left no money of any account. Had he received any large sum in the month of August just preceding his death, it must have been in his possession at his death, nor was there found among his papers

any such bond, as in his testimony Joseph A. Feamster says was the one transferred to him, and referred to in this receipt of August, 1877, nor any such receipts as are referred to in it. In fact no papers having any connection with Joseph A. Feamster were found, except the bond secured by the deed of trust on which there was no credit.

In fact the bond, said by Joseph A. Feamster to have been referred to in this receipt, appears never to have had an existence. Again the conduct of Joseph A. Feamster with reference to this receipt, would be hardly consistent with a supposition that it was a genuine paper. One one occasion, after the institution of the suit by J. J. Livesay against him, he showed to a lawyer the name of Joseph Feamster appended at the foot of this receipt, but he concealed from him the body of this receipt, showing him nothing but the signature and refusing to let him see the body of the receipt. He asked him if this signature of Joseph A. Feamster was in his Joseph A. Feamster's handwriting, The lawyer said it was not. He then showed him the endorsement on the back of this receipt of Joseph A. Feamster, and asked him if that was not his handwriting; and he told him it was. He then asked him if he did not remember, that this paper was drawn up and signed right there, slapping his hand on the office table. He was told by the lawyer that he did not. He then said with an oath, " You do remember. You drew it up yourself." It is true he was then quite drunk. He subsequently, at another time when he was also quite drunk, insisted that this receipt had been drawn up in his office. This was just before he obtained his first injunction. He was told by the lawyer that he was sure he had not drawn the receipt, and if it was drawn up at his office he had no recollection whatever of the fact. He then said "No it was not drawn up by you. I drew it up myself and uncle Joe sent it by Moody or Stone or one of them."

The evidence also clearly proved that the settlement which preceded the giving of the bond of Joseph A. Feamster of four thousand six hundred and thirty-eight dollars and three cents, and the deed of trust to secure it, was a settlement of all matters between them. The actual calculations on which this settlement was based, were made prior to April 13, 1876,

and the interest calculated to that date. The bond was dated as of that date to save interest calculation; though the transactions were not closed till May 1, 1876, when the bond and deed of trust were signed by Joseph A. Feamster. There was no evidence tending to show, that there was any mistake in this settlement, or that Joseph A. Feamster was entitled to any credit which was not given to him; or that there was any controversy about the items of this settlement. It is possible but not probable, that the signature to this receipt of two thousand seven hundred and sixty-three dollars dated August, 1877, was the genuine signature of Joseph Feamster, but it is certain from the evidence, that no such transaction as is described in it, took place between Joseph Feamster and Joseph A. Feamster. The body of the paper is in the handwriting of Joseph A. Feamster, and it is possible, that he wrote it over a signature of Joseph Feamster, which he had signed on a blank piece of paper perhaps years before August, 1877. It was shown, that Joseph Feamster did sometimes thus write his name on blank pieces of paper for his amusement, and took no care of them.

An appeal and *supersedeas* was awarded to the order made in vacation on October 19, 1878, and the order of February 12, 1879, and an appeal from the decree of November 16, 1878, and a *supersedeas* to so much thereof as ordered a sale of the land, upon the petition to this Court of Joseph A. Feamster. Henry Handley and Austin Handley, appellees, on the 5th day of March, 1881, appeared before this Court, reasonable notice thereof having been given the appellant and his counsel, and moved this Court for leave to enter their formal appearance as parties defendants in the first named cause; and to file a release of the said Harvey Handley and Austin Handley, of the deed of trust in said cause named in which they are *cestui qui trusts*. And the appellant by his attorney appeared and objected to the same, and this motion was argued and submitted to this Court for its decision, and is now to be acted upon at the same time that this appeal is considered and determined.

*Davis & Dennis* for appellant cited 15 W. Va. 292; 5 J. J. Mar. 249; 6 Gratt. 49; 6 Leigh 166; 11 Leigh 85; Kelly's

Stat. p. 299, ch. 22, § 5; 6 Gratt. 174; 20 Gratt. 244; 21 Gratt. 334; 4 Rand. 175; 9 W. Va. 299.

*John W. Harris* for appellees cited 22 Gratt. 405; 7 W. Va. 348; 31 Gratt. 323; 19 Gratt. 354; 26 Gratt. 549; 10 W. Va. 299; 12 W. Va. 215; 14 W. Va. 531; 7 W. Va. 217; 11 Wall. 299; 16 Wall. 331; *Parsons* v. *Thornburg*, 16 W. Va.; 24 Gratt. 272; 32 Gratt. 843; 9 W. Va. 301, 307; 12 W. Va. 641; 11 W. Va. 156; 15 W. Va. 831; 1 Lom. Dig. 527; 10 Leigh. 395.

GREEN, JUDGE, announced the opinion of the Court:

These two causes are so far distinct, as to make it suitable to consider them at first separately and then conjointly, so far as the decree of November 16, 1878, which was rendered on them jointly is concerned. And we will first consider the cause first instituted; the cause which J. J. Livesay was plaintiff. It was simply a bill brought by J. J. Livesay, to enforce the lien of a judgment of the circuit court of Greenbrier in his favor, against Joseph A. Feamster. The bill was filed at August rules, 1878. It made as it should have done, the trustees and *cestuis que trust* in the several deeds of trust, which had been executed by Joseph A. Feamster on his largest tract of land, parties defendants. And it stated, that one of these deeds of trust, in which the Handleys were the *cestuis que trust*, had been fully satisfied. And it further charged, "that there were other liens on the lands aforesaid, besides those hereinbefore mentioned, but does not state their amounts and priorities, nor to whom all are due."

The summons was served on all the defendants named in the bill, except the Messrs. Handley; and it was served on the trustee in the deed of trust from Jos. A. Feamster for their benefit. A motion was made by the plaintiff, after Joseph A. Feamster and the other defendants had been served with notice, that the judge would make an order of reference in vacation; and on this motion on October 19, 1878, the judge did refer the cause to the commissioner of the court to report first, the value of the defendant Joseph A. Feamster's lands; second, "the amounts, dignity and priority of all liens upon said real estate and to whom

due;" third, all other pertinent matters. The commissioner forthwith gave notice to all the parties to the suit, including the Messrs. Handley, excepting only one of the trustees in one of the deeds of trust; but the *cestui que trust* in this deed of trust was one of the parties notified, and excepting the *cestui que trust* in one of the deeds of trust, in which the trustee was one of the parties notified. Only three days notice, including Sunday, was given of the purpose of the commissioner to execute this order of reference. And he executed it in a single day. He was not required by the decree to advertise for judgment lienors or others to present their claims, but was only required to give the parties to the suit or their attorneys notice.

On November 16, 1878, there having been no exceptions filed to the commissioner's report, it was confirmed. Two judgments were reported as liens on this land, binds the plaintiffs. One in favor of Wm. W. Moore, and the other in favor of R. P. Lake, neither of whom were parties to the suit. And the commissioner also reported, that the deed of trust in favor of the Messrs. Handleys was satisfied, and that on the last two judgments, executions had been issued and levied on sufficient property to satisfy them. This decree took the bill as confessed against the Messrs. Handleys, though they had never been summoned. Their trustee had before the commissioner as appears by his report admitted, that the deed of trust in their favor had been fully paid. This decree adjudged, that the amounts stated to be due in this report to the defendants in the bill, whose debts were secured by deeds of trusts, should be paid, but not the debt due the plaintiff by his judgment, nor the other debts due persons not parties to the suit, but who had judgment liens. And it then ordered, that unless Joseph A. Feamster, or some one for him, paid within ten days all the debts named in the commissoner's report, as well as the costs of the suit, that the commissioners named should sell his lands for so much cash as would pay the costs of the suit and expenses of sale, and the balance on a credit of six, twelve and eighteen months, with interest from the day of sale taking, from the purchaser bonds with approved security; but not directing the taking of any liens on the lands

to secure the deferred payments.    Proper advertisement of the lands were prescribed by this decree, as well as a proper bond to be given by the commissioner of sales.

These were all the proceedings in this cause.    Is there error in this decree?    Though the record in this case proper, shows no controversy of any sort, and it was so plain and simple a case, yet there are numerous errors and irregularities in it.    The bill on its face shows, that there were judgments on the lands of the debtor other than the plaintiff's, and it was decided in *Neely et al.* v. *Jones et al.* 16 W. Va. p. 625, syllabus 5, that the plaintiff ought to have made formally defendants in the suit all creditors, who had obtained judgments against the debtor in the circuit court of Greenbrier, where the lands sought to be subjected lie, as well as any other docketed judgments on the judgment-lien docket of that county.    The bill however does not clearly show, whether these leinors not made parties belonged to this class; though the subsequent proceedings do show, that these were lienors of this class and that Wm. W. Moore and R. P. Lake, ought to have been properly made formal parties and served with process.    Still if no objection had been made in the court below to so proceeding, this error might have been caused by the court in its order of reference, directing the commissioner to call all judgment-lienors before him and audit their claims.    See *Neely et al.* v. *Jones et al.* 16 W. Va. p. 626, syllabus 10, and *Norris Caldwell & Co.* v. *Bean et al.* 17 W. Va. 655, syllabus 2, sub-division IV and syllabus 3.

The rules laid down in these causes with certain charges and modifications, have been adopted now as a part of our statute-law.    See Acts of 1882, p. 359, 360, ch. 126 § 7. This statute-law should of course, be now strictly pursued in proceedings in suits of this character, whether the suits were instituted before or since this law went into effect; and should of course be pursued in this case, when it is again remanded to the circuit court of Greenbrier for further proceedings, as it must be.

The judge in his order in vacation made on October 19, 1878, failed to do anything towards the correction of this error in the bill in failing to make the proper parties, for he did not in this order of reference direct the commissioner to

call before him the judgment-lien creditors by publication, and to audit their claims. Had he done so and thus made these judgment-lien creditors informally parties to the suit, if no objection had been made upon the authority of these West Virginia cases above cited, this Court would not have reversed his decree of November 16, 1878, ordering a sale of the debtors lands, for this error, if no objection had been made, in the court below, as none was made.

The commissioner by this order of October 19, 1878, was directed to give the parties or their attorneys notice of the time and place for the taking of the accounts ordered. This he failed to do. His failure to notify one of the trustees in one of the deeds of trust, though he was a party to the suit, would have been excusable as he really had no interest in the accounts to be taken ; but his failure to notify one of the *cestui que trust* who had such interest, was inexcusable, even though he did notify his trustee, who merely held the legal title of land conveyed in trust for the security of his debt. To the parties to whom the commissioner did give notice, he gave but a notice of two days Sunday excepted; and he made up his report in a single day. This did not give the debtor nor the other parties, a fair and reasonable opportunity to produce evidence before the commissioner, and to have the accounts ordered fairly made. And in the notice which he did have served on all the other parties to the cause, except the one to the trustee and one to the *cestui que trust*, he misdescribed the suit by stating the plaintiffs' name as J. J. Feamster, instead of J. J. Livesay. In *Gales* v. *Miller* 8 Gratt. (*Bowyer* v. *Knapp*, 15 W. Va. 292), it is laid down, that notice should indicate with reasonable certainty in what cause action is to be taken, and it is probable that this notice was on this account insufficient, had it been objected to in the court below. But this point it is unnecessary to definitely decide as it was not objected to in the court below.

If the report had been excepted to on these accounts, the circuit court ought to have sustained the exception. But as it was not excepted to these objections were waived by all the parties to this suit. See *Peters* v. *Neville*, 26 Gratt. 549; *Hyman* v. *Smith*, 10 W. Va. 299 ; *Anderson* v. *Nagle*, 12 W. Va.; *McCarthy* v. *Chalfant*, 14 W. Va. The judgment-credit-

ors, whom the report of the commissioner shows existed not having been made parties, either formally or informally by order of publication, and having had no opportunity of having their debts properly audited, were of course not bound by the decree of November 16, 1878; and the purchaser of lands under that decree might still have had his land so purchased, held liable for the payment of such judgments; and injustice and wrong would thus have been done both to the purchaser and to these judgment-creditors, whose debts were not audited, and wrong would also have been done to judgment-debtor Joseph A. Feamster, as under such circumstances his lands might be sacrificed.

The court therefore erred in confirming the commissioner's report, though not excepted to, and in ordering a sale of the appellant's lands by this decree of November 16, 1878. If there had been no other error in this decree except the taking of the bill as confessed against the Messrs. Handley, though they had not been served with process, it would probably have been affirmed as they appeared before this court and asked a confirmation of it, and asked to be permitted to file in this court a formal release of the deed of trust in their favor. It is true this was objected to by the appellants. Yet despite this objection it would now probably be permitted to be filed, if there had been no other reason for reversing this decree.

Under circumstances quite similar, this court allowed appellees to release errors in this court in the case of *Arnold et al.* v. *Arnold et al.*, 11 West Va. pp. 455, 456; and on the authority of that case and the cases cited in it, *Craig* v. *Sebrell*, 9 Gratt. 131, *Moore et al.* v. *Holt*, 10 Gratt. 284, and *Mustard* v. *Wohlford's heirs*, 15 Gratt. 329, it is probable, that the motion of the appellees, the Messrs. Handley, to be thus allowed to release errors and file release of this deed of trust, under the circumstances of this case, would be granted, and this decree of November 16th affirmed if there had been no other error in it except that thus released. But as there are other fatal errors in this decree, it is unnecessary for this Court to act on this motion of the Messrs. Handley, and it is therefore not done.

We will now consider the cause of *Joseph A. Feamster* v.

*Samuel Tyree,* and *John W. Harris, adm'r of Joseph Feamster,*
heard with the cause above considered, and the continuation
of this cause by the bill of *Joseph A. Feamster* v. *John W.
Harris* and *Wm. P. Ruckers,* commissioners of sale under
this decree of November 16, 1878; and John W. Harris,
adm'r of Joseph Feamster.

The first of these was to obtain an injunction to prevent
Samuel Tyree, trustee, from selling the land conveyed to him
as trustee, to secure the debt due Joseph Feamster.   The
bill makes no mention whatever of the cause of *J. J. Livesay* v.
*Joseph A. Feamster et als.,* but was based solely on the ground,
that the plaintiff Joseph A. Feamster was as he alleged,
entitled to have corrected the settlement on which his bond
of four thousand six hundred and thirty-eight dollars and
three cents was given to Joseph Feamster and secured by
the deed of trust.   In this bill Joseph A. Feamster claimed
credits for two receipts; one for three hundred and eighty
dollars and sixty-two cents dated May 7, 1868, and the other
for two thousand seven hundred and sixty-three dollars—
dated August—1877, and also for eight hundred dollars
which he claimed he had paid to Joseph Feamster before
this settlement, and which were by mistake all omitted to be
credited in this settlement made when this bond of four
thousand six hundred and thirty-eight dollars and three cents
was given by him.   The injunction as heard was granted
September 25, 1878.   The answer of the administrator of
Joseph Feamster, made on oath, denied all the allegations
of this bill, and all the equities of the plaintiff except that
it said, that the signature of Joseph Feamster to the receipt
of three hundred and eighty dollars and sixty-two cents
while not admitted to be genuine was probably his genuine
signature, but it insisted that if the plaintiff had been
entitled to a credit for this in said settlement he had got it,
as the settlement was made carefully and deliberately and
all credits claimed that were proper were allowed.   Notice
was given to dissolve this injunction.   The trustee Tyree,
had not answered when this notice was served on October
19, 1878, on this bill and answer and general replication
thereto, and the injunction granted was dissolved.   Tyree,
the trustee having filed his answer, and the cause being

heard with the cause of *J. J. Livesay* v. *John A. Feamster et als.*
at the next term of the court; and the decree of November
16, 1868, this bill was dismissed and it was ordered, that
John W. Harris, administrator &c., recover his costs.  Was
there any error in this respect, in this decree?  It is claimed,
that as the trustee, Tyree, had filed no answer the court
could not properly dissolve the injunction.  Tyree was a
mere trustee, and the only person interested in the debt
secured by the deed of trust, which the bill claimed was
subject to large credits not given, did file an answer denying
all the material facts on which the injunction was based.

There is no rule of a court of equity which requires in
every case, that before an injunction will be dissolved on
motion, every defendant must answer the bill.  If the de-
fendant, who has failed to answer is a formal defendant or if
his answer would be in reference only to uncontroverted
facts, the court may order the dissolution of an injunction
though such an answer has not been filed, if the defendants
really interested in the subject of controversy have answered,
and deny on oath every material allegation in the bill, and
no proof is offered to sustain the allegations of the bill.  See
*Hayzlett* v. *McMillan et al.*, 11 W. Va. 464.  In addition to
McMillan & Leonard, Robinson as well as Hale, sheriff,
were made defendants in the bill in that case.  See p. 467.
Only the parties substantially interested in the controversy,
McMillan & Leonard, answered the bill on which the injunc-
tion was awarded.  See p. 474.  Yet the court on motion in
vacation dissolved the injunction, and this Court sustained
this action.  There was therefor no error in the judge of the
circuit court dissolving this injunction, by his order of Octo-
ber 19, 1878, made in vacation.

At the next term of the court, the defendant Tyree, the
trustee, filed his answer which in no way changed the cause
or its merits, and the court on the hearing of the cause by its
decree of November 16, 1878, dismissed the bill of Joseph A.
Feamster at his costs.  This was obviously right, though we
have seen in other respects so far as the cause of *J. J. Live-
say* v. *Feamster et al.* was concerned, heard with this cause,
this decree was erroneous.

Joseph A. Feamster afterwards, on January 1, 1879, by

his bill called a supplemental and amended bill, again asked the court to reinstate this injunction which had been dissolved, or that an original injunction might be granted him to restrain the commissioners Rucher and Harris, appointed by this decree of November 16, 1878, from selling his lands, which they had advertised. None of these were parties to the cause of *Livesay* v. *Joseph A. Feamster et al.*, except the administrator of Joseph Feamster. The bill was based on precisely the same facts as were set out in his first bill of injunction, and no other facts are stated except, that in this decree of November 16, 1878, the whole of the bond of four thousand six hundred and thirty-eight dollars and three cents executed to Joseph Feamster, was held to be due to his administrator, and no credits allowed on it. But no other complaint was made of this decree of November 16, 1878, and none of the irregularities we have pointed out in the cause of *Livesay* v. *Joseph A. Feamster et al.*, were pointed out or referred to. The whole complaint of this bill was, that the large debt due to Joseph Feamster's administrator was entitled to the credits of three hundred and eighty dollars and sixty-two cents, as of May 7, 1868, and of two thousand seven hundred and sixty-three dollars as of August, 1877, as shown by the receipts of Joseph Feamster filed with his first bill of injunction.

In this second bill of injunction no claim even is made to the credit of eight hundred dollars in addition; which was claimed in the prior bill to excuse himself for having failed to take any proof to establish the allegations of his first bill of injunction. The plaintiff alleges that he gave notice to take depositions to sustain these allegations in Lewisburg, on October 17, 1868, and that he was prevented by sickness from taking these depositions then. He files with this bill, his own affidavit and that of two other persons to prove this alleged sickness, and also the affidavits of four other parties to prove the genuineness of the signature of Joseph A. Feamster to the receipt of two thousand seven hundred and sixty-three dollars, dated the — day of August, 1877. The injunction was awarded by the circuit judge as prayed for on January 1, 1869.

The administrator of Joseph Feamster, filed his answer in which he repeats what was said in his former answer to the

first bill of injunction, and denies that Joseph Feamster ever signed this receipt for two thousand seven hundred and sixty-three dollars, dated the —— day of August, 1877, and states, that if the plaintiff was ever entitled to any credit for the three hundred and eighty dollars and sixty-two cents named in the receipt of May 7, 1868, he had received it long ago; it being dated some eight years before the settlement was made on which the bond for four thousand six hundred and thirty-eight dollars and three cents was given. And he alleges, that it is not true that the plaintiff was prevented from taking depositions to prove the allegations of his original bill of injunction by sickness, and that he had up to November 16, 1878, opportunity to take their depositions and have his injunction reinstated. This answer was sworn to by the respondent.

A motion was made to dissolve this injunction after due notice, on January 25, 1879, and was by the judge continued till February 12, 1879, when it was dissolved by an order of the judge in vacation. Was there any error in this order dissolving this injunction. There were many depositions taken on both sides as to the controverted facts, and it was proven satisfactorily as we have shown in the statement of the facts in this cause, that the plaintiff Joseph A. Feamster was not prevented by sickness from taking depositions to prove the allegations in his original bill of injunction, prior to its deposition by the vacation order made October 19, 1878; and much less was he prevented from taking such depositions to reinstate his injunction, prior to the dismissal of this suit on November 10, 1878.

There was a great effort made by the plaintiff, to sustain these allegations with reference to his sickness made in this amended or supplemental bill as it is called. And there can be no question, but that much of the evidence given on this point by some of the plaintiff's witnesses was false. But despite this effort it is clearly proven, that these allegations of this amended bill, with reference to the plaintiff's sickness, were false and were made with fraudulent purposes.

The proof with reference to the genuineness of the signature of Joseph Feamster to the receipt for two thousand seven hundred and sixty-three dollars, in August, 1877, was con-

.flicting. The weight of the evidence is in favor of this signature not being the signature of Joseph Feamster, and my conclusion is, that it is not; but what is perfectly satisfactory to show, that Joseph A. Feamster is entitled to no credit whatever, as of August, 1877, is, that it is affirmatively proven that he could not have paid Joseph Feamster that sum of money or any part of it, or given him any bond or receipts representing that sum or any part of it in August, 1877. During the whole of the month of August, 1877, Joseph Feamster was very sick, confined to his house, and much the greater part of the time to his bed, and actually died on September 10, 1877. During the month of August, 1877, it is certain, that he never saw Joseph A. Feamster. And he left at his death directly after August, 1877, no money in his possession, and no bond or receipts such as Joseph A. Feamster pretends he gave to him in August, 1877, and included in this false and fraudulent receipt of August, 1877.

The conduct of Joseph Feamster and other circumstances, named in the statement of facts in this case shows conclusively, that this receipt of two thousand seven hundred and sixty-three dollars of date the — day of August, 1877, was a forgery gotten up by Joseph A. Feamster in whose handwriting the body of this receipt was; and that either the name of Joseph Feamster appended to it was forged as was most probably the case, or if not, then that the body of the receipt was falsely and fraudulently written by Joseph A. Feamster over a signature of Joseph Feamster on a blank piece of paper, which he had in some way got hold of. The evidence proved, that the smaller receipt for three hundred and eighty dollars and sixty-two cents, dated as far back as May 7, 1868, was genuine, but that it was given many years before the parties made a fair and full settlement of all matters, when the bond for four thousand eight hundred and sixty-three dollars and three cents was given, and that the plaintiff was entitled to no credit therefor on this bond, nor any other credit. He entirely failed to offer any evidence even tending to show, that any mistake of any sort was made in the final settlement in which this bond was given.

I am therefore of opinion, that the material allegations

contained in this original bill of Joseph A. Feamster, as well as those contained in his amended bill, were utterly untrue in point of fact, and that the cases set up by him in both these bills were based upon fraud and falsehood, and that the circuit court did not err in its order made in vacation in dissolving the injunction awarded on January 1, 1879. Though most of the decree of November 16th must be reversed and set aside, because of irregularities in the preparation of the case on the part of J. J. Livesay in his suit, yet as that part of said decree that dismissed the appellant's bill at his costs must be affirmed, as well as this last order dissolving the injunction awarded on January 1, 1879; and as all the matters really the subject of controversy in the court below were correctly decided by the circuit court, the appellees as the parties substantially prevailing, must recover of the appellants their costs in this Court expended. The order of reference of October 19, 1878, as well as the decree of September 16, 1878, must be set aside, reversed and annulled, except that portion of said decree which dismissed the bill filed by Joseph A. Feamster against Samuel Tyree and J. W. Harris, as administrator of Joseph Feamster, which must be affirmed and all the other orders and decrees entered in these causes must also be affirmed; and the cause of *J. J. Livesay* v. *Joseph A. Feamster et als.*, must be remanded to the circuit court of Greenbrier with directions to permit the plaintiff to amend his bill, and make the requisite parties defendants as prescribed in section 7 of ch. 126 of the Acts of 1882; and that he proceed further in said cause as prescribed in said chapter and according to the principles laid down in this opinion, and further according to the principles governing courts of equity.

JUDGES JOHNSON AND HAYMOND CONCURRED.

DECREES AFFIRMED IN PART REVERSED IN PART. CAUSE REMANDED.